UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

BRIAN TRASK,               )
                                     )
         Plaintiff,         )
                                       )
            v.                )      Case No. 1:19-cv-01192
                                       )
TOWN OF ALMA,          )
                                       )
         Defendant.     )

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO AMEND,
GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S CROSS-MOTION
FOR SUMMARY JUDGMENT**
(Docs. 10, 15, 18)

Plaintiff Brian Trask brings this suit against Defendant Town of Alma (the "Town") arising out of services he rendered as the Heavy Motor Equipment Operator ("HMEO") for the Town's Highway Department. On September 5, 2019, Plaintiff filed an initial Complaint asserting a claim for unpaid wages that the Town allegedly owes him under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206-07, for services performed after February 1, 2019. He asserts he was employed by the Town's Superintendent of Highways, Daniel Ford ("Superintendent Ford") and was not paid wages. The Town counters that Supervisor Ronald Staedt ("Supervisor Staedt") discharged Plaintiff and that his discharge has been upheld by an Administrative Law Judge. The Town further contends that Superintendent Ford acted outside the scope of his employment and in direct contrast to the Town's order in continuing to employ Plaintiff after his discharge.

On March 13, 2020, Plaintiff moved to amend his Complaint to include Supervisor Staedt as a named Defendant; to add Plaintiff's wife, Heather Trask, as a plaintiff; to assert a claim pursuant to 42 U.S.C. § 1983 for deprivation of Plaintiff's property interest

under the Fourteenth Amendment; and to assert claims pursuant to 42 U.S.C. § 1983 for infringement of Plaintiff's and Heather Trask's rights to intimate association under the First Amendment. (Doc. 10.)[1]

On April 14, 2020, the Town filed an opposition to Plaintiff's motion to amend and a motion for summary judgment with regard to Plaintiff's FLSA claim based on Arbitrator Jeffrey Selchick's, Esq. ("Arbitrator Selchick") determination that the Town properly terminated Plaintiff. (Doc. 15.)

On May 12, 2020, Plaintiff filed an opposition to the Town's motion for summary judgment as well as a cross-motion for summary judgment on his FLSA claim, arguing that the FLSA, and not Arbitrator Selchick's decision, governs Plaintiff's entitlement to wages following his termination. Plaintiff further contends that the Town and Superintendent Ford were joint employers under the FLSA, entitling Plaintiff to payment for services rendered. (Doc. 18.) The Town opposed Plaintiff's cross-motion for summary judgment on May 26, 2020, and Plaintiff replied on June 9, 2020.

On July 2, 2020, the Town sought leave to amend its motion for summary judgment to include the New York Supreme Court's June 30, 2020 confirmation of Arbitrator Selchick's Opinion and Award. After the court granted that motion, the Town filed a Supplemental Counterstatement of Undisputed Facts on July 9, 2020. On July 14, 2020, the court held a hearing on all pending motions and took them under advisement.

Plaintiff and his wife, Heather Trask, are represented by Michael Frank Geraci, Esq. The Town is represented by Peter L. Veech, Esq., and Heather Dechert, Esq.

## I.      Whether to Grant Plaintiff's Motion to Amend.

### A.      Standard of Review.

Unless a party is amending its pleading as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court

---

[1] In Plaintiff's motion for leave to file an Amended Complaint, he argues in support of a FLSA retaliation claim based on Supervisor Staedt's refusal to implement a Town Board resolution directing Plaintiff's reinstatement. (Doc. 10-1 at 3.) However, "retaliation" is only set forth in the proposed Amended Complaint's prayer for relief and is directed to future retaliation by the Town for filing this action. (Doc 10-4 at 6.)

should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The court may add a new party "at any time[] on just terms[.]" Fed. R. Civ. P. 21. "The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) (citation and internal quotation marks omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."). "Generally, a district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009) (alteration, citation, and internal quotation marks omitted).

**B.     Whether Leave to Amend Must Be Denied for Failure to Comply with W.D.N.Y. Local Rule 15(b).**

In moving to amend his Complaint, Plaintiff did not file a document identifying his proposed amendments in a "redline" version as required by this court's Local Rules. *See* W.D.N.Y. L.R. 15(b) ("Unless the movant is proceeding *pro se*, the amendment(s) or supplement(s) to the original pleading shall be identified in the proposed pleading through the use of a word processing 'redline' function or other similar markings that are visible in both electronic and paper format."). The Town contends that Plaintiff's failure to do so mandates denial of leave to amend because the Town was prejudiced by having to compare the allegations in Plaintiff's initial Complaint with the proposed Amended Complaint to identify Plaintiff's proposed amendments.

"A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001). Plaintiff's proposed Amended Complaint is only six pages, and his proposed amendments are identified in his accompanying memorandum of law. The Town was able to oppose Plaintiff's motion in a timely manner and professes no confusion regarding the claims Plaintiff seeks to assert. Plaintiff recognized his error and attached a redline version of his Amended Complaint to his reply. Under these circumstances, the

3

court will not deny Plaintiff leave to amend solely for his failure to comply with a Local Rule.

### C.    Whether Leave to Amend Must Be Denied Because the Proposed Amendments Were in Bad Faith.

Pointing out that Plaintiff fails to provide a good-faith explanation for his delay in asserting new claims, facts, and theories, the Town asks that leave to amend be denied on that basis. Arbitrator Selchick determined in February of 2020[2] that the termination of Plaintiff's employment was proper. The Town contends that in an effort to gain a tactical advantage, Plaintiff belatedly sought to amend to include information known to him when he filed his Complaint in September of 2019. These new allegations reference a December 28, 2018 text message allegedly sent by Supervisor Staedt that Plaintiff introduced during the arbitration proceedings.[3] The new allegations further contend that commencing on or about December 28, 2018, Supervisor Staedt required Plaintiff's wife, Heather Trask, to falsify official Town Board meeting minutes, caused the Town Board to convene in violation of New York law, appropriated Town authority to terminate Plaintiff during his probationary period, falsely asserted that his effort to terminate Plaintiff was an action of the Town and approved by the Town Board, and refused to pay vouchers issued by Superintendent Ford for Plaintiff's wages. Plaintiff's new allegations also include actions taken by a newly reconstructed Town Board after Plaintiff's complaint was filed.

"[W]hen the opponent of an amendment asserts that the movant is acting in bad

---

[2] The court takes judicial notice of the Opinion and Award for the purpose of deciding Plaintiff's motion to amend. *See* Fed. R. Civ. P. 201(b)(2) (allowing the court to take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *cf. Cox v. Perfect Bldg. Maint. Corp.*, 2017 WL 3049547, at *3 (S.D.N.Y. July 18, 2017) ("[C]ourts have regularly taken judicial notice of arbitration awards and collective bargaining agreements in considering a motion to dismiss[.]") (collecting cases). To the extent the parties, or any one of them, seeks an opportunity to be heard on the propriety of judicial notice, they may request it. *See* Fed. R. Evid. 201(e).

[3] The Town claims that "Plaintiff introduced the same text message allegedly sent by Supervisor Staedt in December 2018 to challenge the termination of his employment" and "waited until now (14 months after he filed the lawsuit) to seek to amend." (Doc. 15-3 at 14.)

faith, there must be something more than mere delay or inadvertence for the court to refuse to allow amendment." *Primetime 24 Joint Venture v. DirecTV, Inc.*, 2000 WL 426396, at *5 (S.D.N.Y. Apr. 20, 2000). "'[A] finding that a party is seeking leave to amend solely to gain a tactical advantage . . . supports a finding that such an amendment is made in bad faith.'" *Franco v. Diaz*, 51 F. Supp. 3d 235, 245 (E.D.N.Y. 2014) (alteration in original) (quoting *Youngbloods v. BMG Music*, 2011 WL 43510, at *9 (S.D.N.Y. Jan. 6, 2011)). However, "it is [often] hard to tell the difference between a legitimate strategic choice and bad faith conduct, and courts generally reject conclusory allegations of bad faith when evaluating a motion to amend." *Underwood v. Roswell Park Cancer Inst.*, 2017 WL 1593445, at *4 (W.D.N.Y. May 2, 2017).

Although there is some evidence that Plaintiff delayed the addition of his text-related allegations without justification, the same cannot be said for Plaintiff's allegations pertaining to the newly constituted Board's alleged decision to fund and reinstate his employment. The Town does not argue that Plaintiff's proposed amendments regarding Supervisor Staedt's actions commencing on or about December 28, 2018 were made in bad faith. Moreover, leave to amend was sought within the deadlines set forth in the court's Scheduling Order. Considering the totality of the circumstances, the court cannot find that Plaintiff's proposed amendments were made in bad faith.

**D.     Whether Plaintiff's Proposed Amendments Are Futile.**

The Town contends that Plaintiff's proposed amendments to his Complaint are futile because he fails to state plausible claims for relief with respect to his and Heather Trask's constitutional claims (Counts II and III). "A proposed amendment to a complaint is futile when it 'could not withstand a motion to dismiss.'" *Balintulo v. Ford Motor Co.*, 796 F.3d 160, 164-65 (2d Cir. 2015) (quoting *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002)). For this reason, leave to amend will be denied if the proposed pleading fails to set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).

The sufficiency of a plaintiff's complaint is evaluated using a "two-pronged

approach[.]" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). First, the court discounts legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. Second, the court considers whether the factual allegations, taken as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. This second step is fact-bound and context-specific, requiring the trial court "to draw on its judicial experience and common sense." *Id.* The court does not "weigh the evidence" or "evaluate the likelihood" that a plaintiff will prevail on his or her claims. *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir. 2017).

### 1. Whether Plaintiff Plausibly States a Claim for Deprivation of His Fourteenth Amendment Due Process Rights (Count II).

Plaintiff moves to amend his Complaint to include a claim alleging Supervisor Staedt infringed on Plaintiff's Fourteenth Amendment Due Process rights by unlawfully depriving him of a property interest in his employment. The Town argues that this claim is not plausibly pled because Article 78 proceedings constitute an adequate post-deprivation remedy. Plaintiff asserts in his motion that he brings his Fourteenth Amendment claim pursuant to 42 U.S.C. § 1983, but he does not address whether his claim alleges a violation of procedural or substantive due process.

42 U.S.C § 1983 is "not itself a source of substantive rights[,]" but instead provides a vehicle "for vindicating federal rights elsewhere conferred[.]" *Patterson v. Cty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). "'To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.'" *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). If a complaint does not "contain specific allegations of fact that demonstrate a deprivation of constitutional rights, . . . it will be dismissed." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 308 (S.D.N.Y. 2001) (citing *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987)).

"The Due Process Clause does not protect against all deprivations of constitutionally protected interests in life, liberty, or property, 'only against deprivations without due process of law.'" *Rivera-Powell v. N.Y. City Bd. of Elections*, 470 F.3d 458, 464 (2d Cir. 2006) (quoting *Parratt v. Taylor*, 451 U.S. 527, 537 (1981)). Courts must "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient[.]" *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted). When an alleged deprivation is based "on random, unauthorized acts by state employees[,]" the Due Process Clause "is not violated when a state employee intentionally deprives an individual of property or liberty, so long as the State provides a meaningful postdeprivation remedy." *Hellenic Am. Neighborhood Action Comm. ["HANAC"] v. City of N.Y.*, 101 F.3d 877, 880 (2d Cir. 1996).

In New York, Article 78 proceedings are the "exclusive remedy for a discharged public employee, who must seek reinstatement prior to seeking unpaid salary[.]" *Vill. of Northport v. Krumholz*, 93 N.Y.S.3d 419, 420 (N.Y. App. Div. 2019); *see also Austin v. Bd. of Higher Educ. of City of N.Y.*, 158 N.E.2d 681, 686 (N.Y. 1959) ("[A]n [A]rticle 78 proceeding is the exclusive remedy available to a discharged public employee."). It is equally well settled that "[a]n Article 78 proceeding is adequate for due process purposes even though the petitioner may not be able to recover the same relief that he could in a § 1983 suit." *HANAC*, 101 F.3d at 881; *see also Locurto v. Safir*, 264 F.3d 154, 175 (2d Cir. 2001) (holding plaintiff failed to state a claim for a Due Process Clause violation against his employer because "[a]n Article 78 proceeding . . . constitutes a wholly adequate post-deprivation hearing for due process purposes"). This is true even if the terminated employee does not pursue Article 78 proceedings, provided they were available. *See Giglio v. Dunn*, 732 F.2d 1133, 1135 (2d Cir. 1984) ("Where, as here, Article 78 gave the employee a meaningful opportunity to challenge . . . his resignation, he was not deprived of due process simply because he failed to avail himself of the opportunity.").

7

As a discharged public employee, Plaintiff could have initiated an Article 78 proceeding within four months of his termination. *See Walton v. New York State Dep't of Corr. Servs.*, 863 N.E.2d 1001, 1005 (N.Y. 2007) (holding claimants must initiate Article 78 proceedings "within four months after the determination to be reviewed becomes final and binding upon the petitioner") (citing N.Y. C.P.L.R. § 217(1)) (internal quotation marks omitted). Because he failed to do so, he has not plausibly alleged that Supervisor Staedt deprived him of procedural or substantive due process in violation of the Fourteenth Amendment. His request for leave to amend the Complaint to add a § 1983 claim is thus DENIED because the amendment would be futile. *See Balintulo*, 796 F.3d at 165 (holding amendments are futile "when [they] could not withstand a motion to dismiss") (citation and internal quotation marks omitted).

### 2.    Whether Plaintiff and Heather Trask Plausibly State Claims for Deprivation of Their First Amendment Rights to Freedom of Association (Counts II and III).

Plaintiff and Heather Trask, in her status as the Town Clerk, seek to pursue claims pursuant to 42 U.S.C. § 1983 against Supervisor Staedt for infringement of their First Amendment rights to associate with each other as spouses. In the proposed Amended Complaint, they allege that Supervisor Staedt sent a profane text to members of the Town Board; required Heather Trask to falsify official Town Board meeting minutes; caused the Town Board to convene in violation of New York law; appropriated Town authority to terminate Plaintiff during his probationary period; falsely asserted that his effort to terminate Plaintiff was an action of the Town and approved by the Town Board; and refused to pay vouchers issued by Superintendent Ford for Plaintiff's wages.

The United States Supreme Court has recognized the existence of a right to "freedom of intimate association" arising from "certain kinds of highly personal relationships" such as marriage. *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984). This right "guarantees an individual the choice of entering an intimate relationship free from undue intrusion by the state." *Sanitation & Recycling Indus. v. City of N.Y.*, 107 F.3d 985, 996 (2d Cir. 1997). The Second Circuit has found "a spouse's claim that adverse action

was taken solely against that spouse in retaliation for conduct of the other spouse" may violate both spouses' freedom of association. *See Adler v. Pataki*, 185 F.3d 35, 42, 44 (2d Cir. 1999) (finding violation of First Amendment where state employee plaintiff was discharged in retaliation for wife's lawsuit against state officials for employment discrimination).

To state a claim of a violation of the right to intimate association, a plaintiff must allege that the spouse's conduct "could not reasonably be found to justify" the employee's actions. *Id.* at 44. The spouse must also have "exercised [his or] her right to free speech under the First Amendment[.]" *Gorman v. Rensselaer Cty.*, 910 F.3d 40, 47 (2d Cir. 2018) (holding brother's claim of interference with right to associate with sister did "not implicate the First Amendment retaliation concerns in *Adler*" where "there is no allegation that [plaintiff's] sister (unlike the plaintiff's wife in *Adler*) at any time exercised her right to free speech under the First Amendment").

In this case, Plaintiff alleges that Supervisor Staedt sent members of the Town Board a text message, laced with profanity, that purports to describe Heather Trask as "the anti group leader[,]" asks "why did we allow this bitch's husband to [be] hired!" and asserts "[w]e need to defund and [eliminate] a third Highway position. We run the town not anti group or the Highway Department!" (Doc. 10-4 at 3, ¶ 14.) Plaintiff asserts that after the text was sent, Supervisor Staedt "[r]efused to pay vouchers issued by [Superintendent Ford] for wages to [him][,]" among other alleged misconduct, in violation of his "First Amendment right to associate with Heather Trask." *Id.* at 5, ¶¶ 27-28. Correspondingly, Heather Trask claims that since the text message was sent, Supervisor Staedt "has engaged in . . . abusive conduct . . . for the purpose of intimidation and interference with the First Amendment right of Heather Trask to petition her government for redress of grievances and her right of association with [Plaintiff]." *Id.* at 6, ¶ 30.

In the proposed Amended Complaint, Plaintiff and Heather Trask do not identify what was said in the email referred to in the text message, nor do they allege that it was protected speech under the First Amendment. Contrary to Plaintiff's contention in his

reply brief, the text message is not alone sufficient to demonstrate "both the petitioning and the retaliation[.]" (Doc. 16 at 6); *See Giachetto v. Patchogue-Medford Union Free School Dist.*, 413 F. Supp. 3d 141, 146 (E.D.N.Y. 2016) (declining to reach the sufficiency of a plaintiff's First Amendment retaliation claim because "[p]laintiff has failed to allege the most basic element . . . that she engaged in protected speech"); *Irwin v. W. Irondequoit Cent. School Dist.*, 2017 WL 881850, at *6 (W.D.N.Y. March 2, 2017) (holding that where a party fails to identify the protected speech or conduct on which a claim is based, that "facts are too vague and speculative to support a First Amendment retaliation claim."). Heather Trask's mere assertion that she "petition[ed] her government for redress of grievances" Doc. 10-4 at 6, ¶ 30; is too vague to "nudge[] [her] claims across the line from conceivable to plausible[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). For this reason, leave to amend to interpose a First Amendment claim on behalf of Heather Trask must be DENIED.

Plaintiff's own First Amendment claim suffers from the same deficiencies because he does not allege the termination of his employment caused an undue intrusion into his marital relationship. *See Rajaravivarma v. Bd. of Trs. for Conn. State Univ. Sys.*, 862 F. Supp. 2d 127, 169 (D. Conn. 2012) (holding plaintiff's violation of the right to association claim failed because he did not "demonstrate that the denial of tenure created an arbitrary or undue intrusion into his marriage"); *Garten v. Hochman*, 2010 WL 2465479, at *5 (S.D.N.Y. June 16, 2010) (dismissing First Amendment right to association claim with children where plaintiff did not allege that the adverse decision had "'the likely effect of ending' his relationship with his children") (quoting *Adler*, 185 F.3d at 43).

Because Plaintiff's and Heather Trask's First Amendment claims would not survive a motion to dismiss, the court DENIES as futile Plaintiff's motion to amend his Complaint to include freedom of association claims pursuant to 42 U.S.C. § 1983 (Counts II and III).

With regard to Plaintiff's alleged retaliation claim, although his motion for leave to amend discusses this claim in some detail, the proposed Amended Complaint does not. Indeed, the only mention of "retaliation" is contained in the prayer for relief which speaks in terms of future, not past, retaliation. *See* Doc. 10-4 at 6 ("With respect to the First Cause of Action . . . prohibiting the Town from taking any adverse employment action against Brian Trask in retaliation for the action"). The retaliation claim is thus bereft of factual content and is not plausible under the *Iqbal/Twombly* standard. Leave to amend to assert a retaliation claim is therefore DENIED as futile.

## II.    The Cross-Motions for Summary Judgment.

### A.    Standard of Review.

The court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' . . . if it 'might affect the outcome of the suit under the governing law.'" *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 39 (2d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 39-40 (quoting *Anderson*, 477 U.S. at 248). The court "constru[es] the evidence in the light most favorable to the non-moving party" and "resolve[s] all ambiguities and draw[s] all permissible factual inferences in favor of the party against whom summary judgment is sought." *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019) (citations and internal quotation marks omitted).

The moving party always "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). When the moving party has carried its burden, its opponent must produce "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. If the evidence "presents a sufficient disagreement to

11

require submission to a jury[,]" the court should deny summary judgment. *Id.* at 251-52.

"The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010). "A non-moving party cannot avoid summary judgment simply by asserting a 'metaphysical doubt as to the material facts.'" *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (internal quotation marks omitted).

"Where, as here, there are cross-motions for summary judgment, 'each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration.'" *Lumbermens Mut. Cas. Co. v. RGIS Inventory Specialists, LLC*, 628 F.3d 46, 51 (2d Cir. 2010) (quoting *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)).

### B. The Undisputed Facts.

#### 1. Plaintiff's Employment with the Town, Termination, and Activities Following His Termination.

Commencing on or about December 7, 2018, Plaintiff was employed as HMEO for the Town Highway Department pursuant to a collective bargaining agreement between the Town and the International Association of Machinists and Aerospace Workers, Local Lodge 1580, District 65 (the "CBA"). Supervisor Staedt, then acting in his official capacity as the Town's Deputy Supervisor, and Karen Linza, then Town Supervisor, negotiated the CBA which governed the terms and conditions of Plaintiff's employment and which imposed a sixty-day probationary period. On January 25, 2019, the Town terminated Plaintiff's employment during the probationary period.

Thereafter, the Town informed Plaintiff of his termination and directed him to

cease working. On January 29, 2019, Supervisor Staedt wrote a letter to Plaintiff notifying him that he had been terminated and should he continue to "operate any [T]own equipment or vehicles or present [himself] at the [H]ighway [D]epartment building[,] we will have no other recourse than to notify law enforcement of your activities." (Doc. 21-2 at 12.) Superintendent Ford was copied on this letter. That same day, the Town sent Superintendent Ford a copy of Plaintiff's termination letter, directed him not to allow Plaintiff to operate any Town equipment or vehicles, and warned him that "to do so would be acting outside of your authority." *Id.* at 10.

Superintendent Ford continued to assign Plaintiff work and oversaw Plaintiff's performance of those assignments. Plaintiff alleges that "[a]t all times since December 4, 2018, I have performed the duties of an HMEO-2 [at] the direction of Highway Superintendent Ford." (Doc. 18-2 at 1, ¶ 5); *see also id.* at 2, ¶ 8 (noting he "continued to perform [his] job at the direction of the Highway Superintendent"). Superintendent Ford "certifies the hours worked by each employee of the Highway Department each pay period" and provides vouchers reporting those hours to Supervisor Staedt. *Id.* at 1, ¶ 7.

At the Town Board's February 5, 2019 meeting, at which both Plaintiff and Superintendent Ford appeared, Plaintiff gave the Town Board a letter informing the Town that he rejected the Town's termination of his employment. *See* Doc. 21-2 at 14. Plaintiff was nonetheless again informed that his employment with the Town had been terminated on January 25, 2019, and the Town Board voted to eliminate his position due to budgetary constraints. *See id.* at 18.

On February 18, 2019, the Town sent Plaintiff a second letter notifying him that he was terminated on January 25, 2019. In that letter, Supervisor Staedt acknowledged that Superintendent Ford was "illegally allowing [Plaintiff] to work after that date" but stated that Superintendent Ford had "no legal authority to continue [Plaintiff's] employment" because his authority "only extends to positions that the Town Board has approved." *Id.* at 20. Because the Town Board eliminated Plaintiff's position, the Town advised him it had "no legal obligation to pay" him and that he would "not be paid for any time" after January 25, 2019 because he was "not a Town employee as of that date." *Id.*

13

On March 22, 2019, Supervisor Staedt sent Superintendent Ford a letter stating
that the Town Board eliminated Plaintiff's position and informing Superintendent Ford
that any further employment of Plaintiff "is illegal, and could subject the Town to serious
liability. Until further notice, you are not authorized to allow [Plaintiff] access to the
Town Highway barn or any Town equipment. You will be personally liable if you
disregard your legal responsibilities as stated in this notice." *Id.* at 22. On March 29,
2019, Town Deputy Supervisor Vincent Bock, acting on behalf of the Town, called New
York State Police barracks in Amity, New York, and requested that Plaintiff be removed
from Town property on the ground that his presence was a trespass. The responding State
Trooper did not remove Plaintiff from Town property because Superintendent Ford
advised the Trooper that Plaintiff "was his employee." (Doc. 21-3 at 2, ¶ 7) (emphasis
and internal quotation marks omitted).

On April 16, 2019, the Town hand-delivered a notice to Plaintiff titled "No
Trespassing" and instructing him to return his keys and other Town property to
Supervisor Staedt's office immediately. Supervisor Staedt advised Plaintiff that he may
attend Town Board meetings but could not otherwise "be on Town property at any time"
unless he notified Supervisor Staedt in advance. (Doc. 21-2 at 26.) Failure to notify
Supervisor Staedt in advance would "result in the Town contacting the police
authorities." *Id.*

On April 24, 2019, Edward A. Trevvett, Esq., an attorney representing the Town,
contacted the Allegany County Attorney for assistance in removing Plaintiff from Town
property. *See* Doc. 21-1 at 7-8.[4] Carissa M. Knapp of the Allegany County Attorney's

---

[4] The email attached as Exhibit 1 to Attorney Trevvett's Affidavit submitted in support of the
Town's motion for summary judgment states that Superintendent Ford was "lawfully separated
from Town employment" but not yet removed from office because he "lost his position by
operation of law when his bond was revoked and no replacement bond was secured." (Doc. 21-2
at 7-8.) At oral argument, the Town's counsel represented that Superintendent Ford is an elected
official and therefore the Town cannot terminate his employment; that Superintendent Ford's
removal is subject to pending N.Y. C.P.L.R. Article 78 proceedings; and that there is an
injunction that prevents the Town from removing Superintendent Ford from office during the
pendency of those proceedings.

Office advised Attorney Trevvett that the Sheriff's Office does not respond to such complaints and further advised him to contact the nearest New York State Police barracks to initiate a trespass complaint against Plaintiff. On April 26, 2019, Attorney Trevvett notified Major Edward Kennedy of the New York State Police via email that Plaintiff continued to trespass on Town property and to use Town vehicles and equipment without authorization. That same day, he contacted Plaintiff's attorney to inform him that Plaintiff was "not to be on Town property as he is a terminated employee." *Id.* at 13. Attorney Trevvett forwarded his communication with Plaintiff's counsel to Major Kennedy. *Id.* at 16-17.

Also on April 26, 2019, Attorney Trevvett sent a letter to the U.S. Department of Labor ("DOL") seeking guidance regarding whether Plaintiff "should have been paid wages for the period of time since his termination." *Id.* at 20. Assistant District Director Michael S. Fitzgerald responded to Attorney Trevvett's inquiry that same day and informed him that the DOL would not take any action to seek Town payment of wages to Plaintiff for any period following the date of the written termination notice. With regard to the Town's efforts to terminate Plaintiff, Mr. Fitzgerald noted "[t]he Town has not had [Plaintiff] arrested as a trespasser, but has advised him in writing that he is not to be on Town property. Whether those two written notices are sufficient enforcement to negate employer liability are ultimately up to the courts to decide." (Doc. 18-1 at 12.)

Mr. Fitzgerald further directed Attorney Trevvett to the definition of "Employer" under the FLSA and stated: "As the former Highway Superintendent, despite being aware of the termination, allowed [Plaintiff] to come on the property and work, he could be considered a 3(d) employer and also be liable for any wages owed to" Plaintiff. *Id.* When Plaintiff's counsel asked for "clarification of the Department's position" regarding "the consequence of the determination that the Superintendent of Highways is an employer" in October of 2019, Mr. Fitzgerald responded that Superintendent Ford "could be considered a 3(d) employer and <u>also</u> be liable for any wages owed to [Plaintiff]. I did not write solely liable." *Id.* at 14 (internal quotation marks omitted) (emphasis in original).

In or about June of 2019, Town Deputy Supervisor Bock called the Allegany

15

County Sheriff's Office and requested that it remove Plaintiff from Town property for trespass. The Sheriff's Office advised that the matter "was [a] civil issue and not a criminal issue." (Doc. 21-3 at 2, ¶ 8) (internal quotation marks omitted). On January 13, 2020, Town Deputy Supervisor Bock asked the Amity New York State Police barracks for their assistance in removing Plaintiff from Town property. He was informed by the Trooper on duty that law enforcement "would look into the issue." *Id.* at 3, ¶ 9. To Town Deputy Supervisor Bock's knowledge, the New York State Police have taken no action with regard to Plaintiff's alleged trespass.

## 2.   The Arbitration of Plaintiff's Termination.

Pursuant to the CBA, Plaintiff's union representative filed a grievance challenging his termination on March 29, 2019, and an arbitration hearing was held on November 26, 2019 before Arbitrator Selchick. Plaintiff was offered the opportunity to present evidence, examine witnesses, make arguments in support of his position, and submit post-hearing briefing.

On February 1, 2020, Arbitrator Selchick issued an Opinion and Award dismissing Plaintiff's grievance and finding that "just cause" required under the CBA did not apply to a probationary employee:

> [T]he Arbitrator finds that the parties have agreed that it is the Town, and not the Highway Superintendent, that has the authority to terminate an employee during the [sixty]-day probationary period. If a probationary employee is terminated during the [sixty]-calendar day period, the parties agree that the decision to terminate the employment is beyond the Arbitrator's jurisdiction. The language of Article 9 ("Probation Period") . . . can be paired with the language of Section 7.01, to reach the conclusion that it is the Town ("Employer") that is the body that can terminate an employee during the probationary period. Should the Town not terminate an employee by the end of the probationary period, the parties go on to state in Section 9.01 that the period "may be extended by mutual agreement between the Superintendent of Highway and the Union."
>
> Accordingly, in the instant case, had the Town not terminated [Plaintiff] as a probationary employee, which is to say that [Plaintiff] would have made it to the end of the [sixty] calendar day probationary period, the Highway Superintendent would then have had the power, provided he had the Union's consent, to extend the probationary period. The Highway

12, 2020, the Town sent Superintendent Ford a tender of defense and demand for indemnification for any liability and costs incurred in this litigation.

Pursuant to N.Y. C.P.L.R. § 7510, Judge Ann Marie Taddeo of the Monroe County Supreme Court confirmed Arbitrator Selchick's Opinion and Award on June 30, 2020. Plaintiff has not been paid by the Town or Superintendent Ford for services performed since February 3, 2019. He asserts that between February 3, 2019 and May 6, 2020, Superintendent Ford has certified that he is owed approximately $54,000 in unpaid wages.

### C.    Whether There Are Any Disputed Issues of Material Fact.

The parties do not dispute the underlying facts, however, they contest the legal interpretation of those facts. For example, the Town disputes Plaintiff's statement that the Town was Plaintiff's "employer" and that Plaintiff "performed work" for the Town Highway Department. *See, e.g.*, Doc. 21-7 at 1-3, ¶¶ 16-19. The "ultimate decision as to whether a party is an employer [under the FLSA]. . . is a legal conclusion[.]" *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 76 (2d Cir. 2003); *see also Torres-Lopez v. May*, 111 F.3d 633, 638 (9th Cir. 1997) ("Whether an entity is a 'joint employer' under the FLSA . . . is a question of law."); *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991) ("Whether a party is an employer within the meaning of the FLSA is a legal determination."). As a result, this determination does not create a disputed issue of fact.

Plaintiff, in turn, disputes whether Arbitrator Selchick determined Superintendent Ford did not have the authority to extend Plaintiff's probationary period or continue to employ Plaintiff after his termination. He contends that Arbitrator Selchick "refused to even consider [Plaintiff's] submission of the issue of the Town's obligation to pay him for his labor." (Doc. 18-1 at 3, ¶ 11.) Because Arbitrator Selchick's Opinion and Award is detailed, thorough, and speaks for itself, Plaintiff's interpretation of it does not create a disputed issue of material fact. The issue is not whether Arbitrator Selchick reached the right conclusion, but whether the conclusion he rendered is material to Plaintiff's claims. *See Citizens Health Corp. v. Sebelius*, 725 F.3d 687, 695 (7th Cir. 2013) (holding district court did not err in granting summary judgment by "overlooking disputed issues of

material fact" where "plain text" of document "unambiguously" mandated outcome).

Both parties address whether the Town must pay liquidated damages arising out of Plaintiff's FLSA claim, however, neither party squarely addresses whether Superintendent Ford can bind the Town to pay wages unauthorized by the Town Board. The dispute regarding the Town's good faith must therefore await further determination.

Because there are no factual disputes that preclude summary judgment, it may be granted if the moving party establishes its entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

### D.   Whether Arbitrator Selchick's Opinion and Award Precludes Plaintiff's FLSA Claim.

The Town argues that Plaintiff's FLSA claim must be dismissed based on the doctrines of res judicata and collateral estoppel because Arbitrator Selchick determined that the Town, and not Superintendent Ford, had the authority to terminate Plaintiff's employment during his probationary period under the CBA, precluding Plaintiff's claim under the FLSA that the Town was his "employer" after January 25, 2019. Plaintiff responds that Arbitrator Selchick rendered a jurisdictional ruling rather than an adjudication on the merits and that his decision does not preclude Plaintiff's FLSA claim.

"[R]es judicata and collateral estoppel apply to issues resolved by arbitration where there has been a final determination on the merits[.]" *Jacobson v. Fireman's Fund Ins. Co.*, 111 F.3d 261, 267-68 (2d Cir. 1997) (citation and internal quotation marks omitted); *see also Pike v. Freeman*, 266 F.3d 78, 90 (2d Cir. 2001) ("It is well settled that [res judicata] serves to bar certain claims in federal court based on the binding effect of past determinations in arbitral proceedings."); *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998) ("[C]ollateral estoppel can be predicated on arbitration proceedings.").

Res judicata bars a plaintiff from litigating a claim when an earlier decision provided: "(1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007) (quoting *In re Teltronics Servs., Inc.*, 762 F.2d 185, 190 (2d Cir. 1985)) (internal

quotation marks omitted). A dismissal based on lack of jurisdiction "is not an adjudication of the merits, and hence has no res judicata effect." *St. Pierre v. Dyer*, 208 F.3d 394, 400 (2d Cir. 2000) (discussing subject matter jurisdiction).

In this case, the arbitration involved both Plaintiff and the Town as well as Plaintiff's union. During arbitration, Plaintiff challenged his termination, and the parties presented to Arbitrator Selchick the same evidence regarding the sequence of events preceding Plaintiff's termination which they present to this court. Arbitrator Selchick ultimately found that the Town's termination of Plaintiff "is conduct on the part of the Town that the parties have excluded from the grievance process and arbitral consideration" under the CBA, and therefore "the grievance lacks substantive arbitrability[.]" (Doc. 15-2 at 24-25.) In other words, he based his conclusion "solely on the limitations on his jurisdiction as set forth in the parties' Agreement." *Id.* at 25. Because Arbitrator Selchick did not reach the merits of Plaintiff's grievance, res judicata does not prohibit Plaintiff from raising an FLSA claim in this court.

Collateral estoppel bars a party from relitigating an issue decided in another proceeding where "the identical issue" was raised and actually decided in the previous proceeding and its resolution "was necessary to support a valid and final judgment on the merits" provided the "application of the doctrine is fair." *CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 77 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 557 (2017) (alterations in original) (quoting *Bear, Stearns & Co., Inc. v. 1109580 Ontario, Inc.*, 409 F.3d 87, 91 (2d Cir. 2005)). "The party alleging issue preclusion has the burden of showing that the identical issue was decided in the prior proceeding, while the party opposing preclusion has the burden of showing an absence of a full and fair opportunity to litigate that issue." *Green v. Montgomery*, 219 F.3d 52, 55 (2d Cir. 2000). "An arbitration decision may effect issue preclusion in a later litigation only if the proponent can show with clarity and certainty that the same issues were resolved." *CBF Indústria de Gusa S/A*, 850 F.3d at 77 (alterations, citation, and internal quotation marks omitted).

Arbitrator Selchick decided whether the Town had the authority to terminate Plaintiff during his probationary period and whether Superintendent Ford had the

authority to extend Plaintiff's probationary period under the CBA. He concluded that "the parties have agreed that it is the Town, and not the Highway Superintendent, that has the authority to terminate an employee during the 60-day probationary period." (Doc. 15-2 at 23.) He further found the "Highway Superintendent's ability to extend the probationary period . . . comes into play only if the Town itself has not terminated the probationary employee during the probationary period." *Id.* at 24. These issues were raised in the litigation, actually litigated, and actually decided, however, there was no adjudication on the merits, and thus Arbitrator Selchick's determination of Plaintiff's status was not "necessary to support a valid and final judgment on the merits[.]" *AMCI Holdings, Inc.*, 850 F.3d at 77.

Even if Plaintiff was barred from relitigating whether the Town could and did terminate his employment under the CBA, he is not barred from asserting an FLSA claim because that claim depends upon the "economic reality" of Plaintiff's employment following his termination. *See Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) ("[T]he 'economic reality' test encompasses the totality of circumstances, no one of which is exclusive."); *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984) (holding the "court below erred [by] . . . giving undue weight to the control factor alone."). It thus remains possible that although the Town terminated Plaintiff's employment in accordance with the CBA, it remained Plaintiff's "employer" under the FLSA when Superintendent Ford continued to assign Plaintiff work. *See* 29 C.F.R. § 785.11 (stating under FLSA regulations "[w]ork not requested but suffered or permitted is work time" if the "employer knows or has reason to believe that [the employee] is continuing to work").

The Supreme Court has held that the FLSA grants a "nonwaivable" right to a minimum wage pursuant to congressional mandate. *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981). As a result, "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." *Id.* (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945)). FLSA rights further "take precedence over

conflicting provisions in a collectively bargained compensation arrangement." *Id.* at 740-41.[5] Because an "arbitrator's power is both derived from, and limited by, the collective-bargaining agreement[,]" and because "Congress intended to give individual employees the right to bring their minimum-wage claims under the FLSA in court," which is "best protected in a judicial rather than in an arbitral forum," FLSA claims are "not barred by the prior submission of [a] grievance[] to the contractual dispute-resolution procedures." *Id.* at 744-45; *see also Albertson's, Inc. v. United Food & Commercial Workers Union, AFL-CIO & CLC*, 157 F.3d 758, 761 (9th Cir. 1998) ("[I]t is irrelevant whether the employees' claims may present an arbitrable dispute; they have an independent statutory right under the FLSA that they are entitled to pursue in court.").

Although Arbitrator Selchick "may be competent to resolve many preliminary factual questions, . . . he may lack the competence to decide the ultimate legal issue whether an employee's right to a minimum wage or to overtime pay under the [FLSA] has been violated." *Barrentine*, 450 U.S. at 743. Arbitrator Selchick's Opinion and Award thus does not dictate the outcome of Plaintiff's FLSA claim. *See Grimes v. BNSF Ry. Co.*, 746 F.3d 184, 188 (5th Cir. 2014) (holding that "arbitral findings of fact [were] conclusive on [the plaintiff's] CBA claim" but were "not, however, necessarily conclusive in a suit brought under a different statute") (per curiam) (discussing *Barrentine*, 450 U.S. at 743, 745); *Speers v. State*, 739 N.Y.S.2d 203, 204 (N.Y. App. Div. 2001) (holding arbitration award addressing whether the plaintiff was entitled to overtime under a CBA "may be relevant to the FLSA claim" but "should not be given

---

[5] The Town contends that it would be "irrational" for Plaintiff to argue that Superintendent Ford "somehow had the authority under New York state law to . . . create a joint employer relationship" because the "clear language" of the CBA prevents this, and the New York State Comptroller opined in 1969 that the Highway Superintendent's authority to hire and supervise employees is governed by a collective bargaining agreement which covers those powers. (Doc. 21-8 at 19-20). The FLSA is a federal law, the interpretation and effect of which are governed by federal rather than state law. *See Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 144 (2d Cir. 1999) (holding in deciding whether employer had right contribution from joint employer that "federal law, not state law, supplies the appropriate rule of decision because the instant claim has been brought solely pursuant to the FLSA").

22

preclusive effect under the doctrine of collateral estoppel"). The court therefore DENIES the Town's motion for summary judgment on the ground that Arbitrator Selchick's decision bars Plaintiff's FLSA claim.

**E.     Whether the Town is an "Employer" or "Joint Employer" of Plaintiff Under the FLSA.**

"To be held liable for violations of the FLSA, a defendant must be an employer of the plaintiff alleging those violations." *Moses v. Griffin Indus., LLC*, 369 F. Supp. 3d 538, 543 (S.D.N.Y. 2019) (footnote omitted). The FLSA "defines the verb 'employ' expansively to mean 'suffer or permit to work.'" *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) (quoting 29 U.S.C. § 203(e), (g)). "Employer[,]" in turn, is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d). If a plaintiff has more than one employer, a "joint employer is jointly and severally liable with the employer and any other joint employers for compliance with all of the applicable provisions of the Act, including the overtime provisions, for all of the hours worked by the employee in that workweek." 29 C.F.R. § 791.2(f).

Plaintiff argues he is entitled to summary judgment on his FLSA claim because the Town and Superintendent Ford were his joint employers. The Town responds that it cannot be considered Plaintiff's employer under the FLSA because the Town terminated Plaintiff's employment and exhausted all means to prevent Plaintiff from working for the Town "[s]hort of illegally imprisoning him or barricading the entire highway garage property," including repeatedly reporting his alleged trespasses to local law enforcement officials. (Doc. 21-8 at 6.)

Because "broad coverage" under the FLSA "is essential to accomplish [the statute's] goal[s][,]" the Supreme Court "has consistently construed the Act 'liberally to apply to the furthest reaches consistent with congressional direction[.]'" *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985) (quoting *Mitchell v. Lublin, McGaughy & Assocs.*, 358 U.S. 207, 211 (1959)). The definition of "employ" has been interpreted with "striking breadth" to stretch the meaning of "'employee' to cover some

23

parties who might not qualify as such under a strict application of traditional agency law principles in order to effectuate the remedial purposes of the act." *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013) (quoting *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008)) (internal quotation marks omitted); *see also Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728 (1947) (holding the FLSA contains "no definition that solves problems as to the limits of the employer-employee relationship under the Act"). Courts therefore must look to the "economic reality" of whether an employer-employee relationship exists rather than "technical concepts" when determining FLSA liability. *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961) (internal quotation marks omitted).

Pursuant to the "economic reality" test, courts consider the following factors in resolving whether an entity is an "employer" under the FLSA: "'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Herman*, 172 F.3d at 139 (quoting *Carter*, 735 F.2d at 12). "[T]he overarching concern is whether the alleged employer possessed the power to control the workers in question[.]" *Id.*; *see also Fermin v. Las Delicas Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 35 (E.D.N.Y. 2015) ("When it comes to 'employer' status under the FLSA, control is key.") (citation and internal quotation marks omitted).

Although formal control is an essential element of the economic reality test, an employer is not required to "continuous[ly] monitor[] . . . employees, looking over their shoulders at all times," or exercise "any sort of absolute control[.]" *Herman*, 172 F.3d at 139. Rather, "[c]ontrol may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA[.]" *Id.* (quoting *Donovan v. Janitorial Servs., Inc.*, 672 F.2d 528, 531 (5th Cir. 1982)). For this reason, the court must consider whether a potential employer had "functional control over workers even in the absence of the formal control measured by the [four traditional] factors." *Zheng*, 355 F.3d at 72 (holding district court erred in applying only four factors

regarding formal control).[6]

The economic reality test "encompasses the totality of circumstances, no one of which is exclusive." *Herman*, 172 F.3d at 139; *see also Barfield*, 537 F.3d at 141-42 ("[T]his court has treated employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances."). The court "need not decide that *every* factor weighs against joint employment" to define whether the Town was a joint employer. *See Zheng*, 355 F.3d at 77 (emphasis in original); *see also Barfield*, 537 F.3d at 143 (noting there is "no rigid rule for the identification of an FLSA employer" and that the Second Circuit "provide[s] a nonexclusive and overlapping set of factors to ensure that the economic realities test . . . is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA") (citation and internal quotation marks omitted). Rather, "any relevant evidence may be considered, and mechanical application of the test is to be avoided." *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir. 1988).

Arbitrator Selchick determined that the Town was the Plaintiff's employer and the Town Board eliminated Plaintiff's position on February 5, 2019. Thereafter, the Town no longer determined the rate and method of payment for Plaintiff's employment, nor did it maintain employment records for him. An employer does not "suffer or permit" an employee to work where it "adopt[s] all possible measures" to "forestall unwanted

---

[6] In *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 72 (2d Cir. 2003), the Second Circuit identified the following non-exhaustive list of factors to assess functional control in a joint employment relationship: (1) whether the purported joint employer's premises and equipment were used for the plaintiff's work; (2) whether the direct employer had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which the plaintiff performed a job that was integral to the joint employer's operation; (4) whether responsibility for employment under the governing authority could pass from one joint employer to another without material changes; (5) the degree to which the joint employer or its agents supervised the plaintiff's work; and (6) whether the plaintiff worked exclusively or predominantly for the joint employer. *Id.*; *accord Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 145 (2d Cir. 2008) (applying *Zheng* factors in addition to formal control factors). The Second Circuit emphasized these factors may be "illuminating" in certain circumstances but a district court is "also free to consider any other factors it deems relevant to its assessment of the economic realities." *Zheng*, 355 F.3d at 71-72.

work[.]" *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 290-91 (2d Cir. 2008). In this case, the Town employed every measure reasonably available to it to sever its employment relationship with Plaintiff and to assure it was not resurrected. The Town repeatedly notified Plaintiff and his counsel in writing that Plaintiff had been terminated, that Superintendent Ford did not have the authority to continue assigning him work, and that Plaintiff would not be paid for any work he performed after January 25, 2019. In two of those letters, the Town warned Plaintiff that it would notify law enforcement if he continued working on Town property or using Town equipment. *See* Doc. 21-2 at 12 (advising Plaintiff "we will have no other recourse than to notify law enforcement of your activities"); *id.* at 26 (instructing Plaintiff that he could only attend Town Board meetings and must otherwise obtain Supervisor Staedt's permission to "be on Town property at any time" or Supervisor Staedt would "contact[] the police authorities").

In addition, Town Deputy Supervisor Bock and Attorney Trevvett contacted law enforcement six times to either remove Plaintiff from Town property or seek counsel regarding how to do so. On March 29, 2019, Town Deputy Supervisor Bock contacted the New York State Police Barracks to remove Plaintiff from Town property and was advised they would not do so because Superintendent Ford represented that Plaintiff was "his employee." (Doc. 21-3 at 2, ¶ 7) (emphasis in original). In June of 2019 and on January 13, 2020, Town Deputy Supervisor Bock requested that the New York State Police remove Plaintiff from Town property. When Arbitrator Selchick issued an Opinion and Award in February of 2020, the Town asked the Allegany County Undersheriff to implement the decision. Although law enforcement did not intervene, the Town persistently sought its assistance over the course of approximately ten months to enforce Plaintiff's termination. Short of removing Superintendent Ford, which the Town represented it cannot do, the Town has taken every conceivable step to terminate its employer-employee relationship with Plaintiff and to defeat any claim that it was his joint employer. Nothing more is required.

The "definition 'suffer or permit to work' was obviously not intended to stamp all persons as employees who, without any express or implied compensation agreement,

26

might work for their own advantage on the premises of another." *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947). It follows that Congress did not intend for the FLSA to hold hostage an employer who lawfully terminates an employee, informs and instructs that employee multiple times to cease performing work, eliminates the source of funding for the employee's position, asks the employee's immediate supervisor on numerous occasions to stop assigning the employee work, and seeks assistance from a variety of criminal and civil law enforcement agencies to remove the employee from the employer's premises. In order for joint employer liability to apply, the Town must exercise "significant control" over Plaintiff's employment. *In re Enter. Rent-A-Car Wage & Hour Emp't Practices Litig.*, 683 F.3d 462, 468 (3d Cir. 2012) (holding an alleged employer must exercise "significant control" to be considered a joint employer under the FLSA) (quoting *N.L.R.B. v. Browning-Ferris Indus. of Pa.*, 691 F.2d 1117, 1124 (3d Cir. 1982)) (internal quotation marks omitted)); *see also Garcia-Celestino v. Ruiz Harvesting, Inc.*, 898 F.3d 1110, 1123 (11th Cir. 2018) (holding FLSA claim failed where employer "did not exhibit significant control over [p]laintiffs"). After January 25, 2019, the Town had no control over Plaintiff's further employment and thus cannot be considered Plaintiff's "employer" or "joint employer" under the FLSA.

In contrast, Superintendent Ford exercised formal and functional control over Plaintiff and acted alone in instructing Plaintiff to continue working. Supervisor Ford alone supervised Plaintiff's continued activities on Town property and directed his work. *See Barfield*, 537 F.3d at 145 (noting functional control existed over nurse where hospital "effectively controlled the on-site terms and conditions of [nurse's] employment" and the nurse "worked exclusively for" the hospital); *Zheng*, 355 F.3d at 74 ("[A] defendant's extensive supervision of a plaintiff's work is indicative of an employment relationship[.]"). Superintendent Ford "certifie[d] the hours worked by each employee of the Highway Department each pay period[,]" (Doc. 18-2 at 1) including Plaintiff, and created vouchers of those hours for submission to Supervisor Staedt. *See Zheng*, 355 F.3d at 72 (finding that employment relationship may exist if entity "*de facto* set the workers' wages" even if it "did not literally pay the workers") (citing *Rutherford*, 331 U.S. at 726);

27

29 C.F.R. § 791.2(a)(2) (defining "employment records" to include "payroll records"). Because "the evidence compels a single conclusion, *i.e.*, that the direction [Plaintiff] received as to" the time he worked, "the way [he] was to record [his] work," and the specific tasks he was assigned "all came from" Superintendent Ford, under the FLSA Superintendent Ford was Plaintiff's sole "employer." *Barfield*, 537 F.3d at 147.

For the reasons set forth above, the court DENIES Plaintiff's motion for summary judgment asking the court to find as a matter of law that the Town was his joint employer and GRANTS the Town's motion for summary judgment on this same issue.

**F.     Plaintiff's Request for Liquidated Damages.**

An "employer" who violates the FLSA's provisions governing minimum wages and overtime compensation "shall be liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). An employer may avoid liability of liquidated damages if it established that it acted "in good faith" and had "reasonable grounds for believing that [its] act or omission was not a violation" of the FLSA. 29 U.S.C. § 260. "Under [the FLSA] § 260, the employer bears the burden of establishing the defense of good faith." *Brock v. Wilamowsky*, 833 F.2d 11, 19 (2d Cir. 1987).

"Good faith" requires "plain and substantial evidence of at least an honest intention to ascertain what the Act requires and to comply with it." *Id.* The Town has satisfied this standard for its conduct and those acting at its direction. It is not clear, however, what, if any, compensation may be owed by the Town for a wage liability created by Superintendent Ford. In its reply brief, the Town asks the court to find that Superintendent Ford is the real party in interest for Plaintiff's FLSA claim. Rather than recast Plaintiff's claim based on an argument raised for the first time in a reply brief, the court will address that issue only when it is squarely before the court. *See, e.g.*, *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009) (holding the court "ordinarily will not consider issues raised for the first time in a reply brief.").

Superintendent Ford clearly has a relationship with the Town, and may have had

the authority to bind the Town by his actions. As Plaintiff points, out under New York law, "a Superintendent of Highways has the power to employ such persons as are necessary to repair highways in the town, but he must file a list of the names of the persons so employed with the compensation paid to each in the office of the Town Clerk." *Clarke v. Town of Russia*, 283 N.Y. 272, 273 (1940).[7] By encouraging Plaintiff to continue to work, assigning him tasks, and supervising his performance, Superintendent Ford became Plaintiff's sole employer after he was terminated on January 25, 2019, and any FLSA claim, in turn, lies solely against Superintendent Ford in that capacity. Whether the Town must pay that claim has not been briefed and is not properly before the court. In turn, for that same reason, the court must at this juncture DENY Plaintiff's cross-motion for summary judgment with regard to payment of liquidated damages.

## CONCLUSION

For the reasons stated above, the court DENIES Plaintiff's motion to amend on futility grounds. (Doc. 10.) The court GRANTS IN PART AND DENIES IN PART Defendant's motion for summary judgment. (Doc. 15.) The court DENIES Plaintiff's cross-motion for summary judgment. (Doc. 18.)

SO ORDERED.

Dated this 30th day of October, 2020.

Christina Reiss, District Judge
United States District Court

---

[7] In his proposed Amended Complaint and at oral argument, Plaintiff asserted that the Town Board approved a resolution funding Plaintiff's position and directing Supervisor Staedt to pay him wages on or about January 15, 2020. Plaintiff does not provide a record citation for this allegation. The court therefore does not consider it on summary judgment. *See Deanda v. Hicks*, 137 F. Supp. 3d 543, 564 (S.D.N.Y. 2015) ("[I]f a party fails to properly support a statement by an adequate citation to the record, the Court may properly disregard that assertion.") (citation omitted).